**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DOMINIQUE FREEMAN, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>MAM USA CORPORATION,<br><br>        Defendant. | Case No.: 1:20-cv-01834<br><br>Honorable Edmond E. Chang |

**PLAINTIFF'S SUR REPLY MEMORANDUM OF LAW IN SUPPORT OF HER MOTIONS TO EXCLUDE, IN ITS ENTIRETY, THE OPINIONS OF DEFENDANT'S EXPERT PROFESSOR DAVID GAL, Ph.D., AND, IN PART, THE OPINIONS OF DEFENDANT'S EXPERT ASSISTANT PROFESSOR ISABELLE CHASE, DDS, FRCD(C)**

**[REDACTED VERSION FILED ON THE PUBLIC DOCKET]**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ...................................................................................................1

II.   PLAINTIFF'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR.
      GAL AND PROFESSOR ISABELLE CHASE ...................................................1

      A.    PLAINTIFF'S CHALLENGES TO DR. GAL'S QUALIFICATIONS
            ARE COMPELLING..................................................................................1

            1.    Dr. Gal is Unqualified to Opine on Dr. Dennis' Conjoint Analysis
                  and Dr. Verlinda's Price Premium Estimates ...............................2

                  (a)    Dr. Dennis' Conjoint Analysis.........................................3

                  (b)    Dr. Verlinda's Price Premium Estimates .........................6

            2.    Defendant's Use of the Conjoint Survey Methodology for Price
                  Premium Purposes is Ironic ...........................................................7

            3.    Defendant's Criticisms of Dr. Dean Are Irrelevant .....................7

      B.    THE PARAGRAPHS IN THE CHASE REPORT PERTAINING TO FEA
            MUST BE STRICKEN DUE TO DR. CHASE'S LACK OF EXPERTISE
            AND EXPERIENCE IN THE RELEVANT FIELD AND HER FAILURE
            TO EXAMINE OR VERIFY THE UNDERLYING MODELS ..........................8

            1.    Defendant Vastly Overstates The Degree Of Support Regarding
                  FEA Expressed By the AAPD And Understates The Chase
                  Report's Use Of Those Sources .......................................................8

                  (a)    Defendant overstates the degree of support for FEA
                         expressed by the AAPD ....................................................9

                  (b)    The Chase Report Uses FEA More Than Defendant
                         Represents .......................................................................10

            2.    Dr. Chase Lacks The Requisite Knowledge And Skill To Review,
                  Apply, or Opine on FEA Analysis.................................................10

III.  PLAINTIFF'S MOTION FOR CLASS CERTIFICATION ...............................13

      A.    Dr. Dean is Qualified, and His Methodology is Scientifically Reliable and
            Will Assist the Trier of Fact.................................................................13

      B.    Dr. Dennis is Qualified, His Methodology is Scientifically Reliable, and
            Will Assist the Trier of Fact.................................................................14

      C.    Dr. Verlinda is Qualified, His Methodology is Scientifically Reliable, and
            Will Assist the Trier of Fact.................................................................15

IV.   CONCLUSION...................................................................................................17

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Benson v. Newell Brands, Inc.*,
No. 19 C 6836, 2021 WL 5321510 (N.D. Ill. Nov. 16, 2021) ................................................14

*Bozick v. Conagra Foods, Inc.*,
No. 19-cv-4045 (LJL), 2022 WL 4561779 (S.D.N.Y. Sept. 28, 2022) ...........................12, 13

*In re Broiler Chicken Antitrust Litig.*,
No. 16 C 8637, 2022 WL 1720468 (N.D. Ill. May 27, 2022) ...................................................6

*Cardenas v. Toyota Motor Corp.*,
No. 18-22798-CIV, 2021 WL 5811741 (S.D. Fla. Dec. 6, 2021)............................................16

*Coffey v. Dowley Mfg. Inc.*,
187 F. Supp. 2d 958 (M.D. Tenn. 2002)................................................................................13

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)....................................................................................3, 6, 7, 17

*Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*,
285 F.3d 609 (7th Cir. 2002) .........................................................................................11, 12

*Gayton v. McCoy*,
593 F.3d 610 (7th Cir. 2010) ...................................................................................................10

*Medtronic, Inc. v. Boston Sci. Corp.*,
No. 99-1035, 2002 WL 34447587. (D. Minn. Aug. 8, 2002)..................................................13

*Noffsinger v. Valspar Corp.*,
No. 09 C 916, 2013 WL 12340339 (N.D. Ill. Jan. 4, 2013) ....................................................11

*In re NorthShore Univ. HealthSystem Antitrust Litig.*,
No. 07 CV 04446, 2023 WL 2138971 (N.D. Ill. Feb. 20, 2023).............................................8

*Sansone v. Brennan*,
917 F.3d 975 (7th Cir. 2019) .....................................................................................................8

*Smith v. Ford Motor Co.*,
215 F.3d 718 (7th Cir. 2000) ....................................................................................................6

*Takeda Pharms. USA, Inc. v. Spireas*,
No. CV 17-0452, 2019 WL 9596536 (E.D. Pa. Sept. 4, 2019) ........................................16, 17

*Thomas J. Kline, Inc. v. Lorillard, Inc.*,
  878 F.2d 791 (4th Cir. 1989) ............................................................................5, 10

*U.S. v. Chang*,
  207 F.3d 1169 (9th Cir. 2000) ........................................................................3, 5, 10

*Virginia Vermiculite Ltd. v. W.R. Grace & Co.-Conn.*,
  98 F. Supp. 729 (W.D. Va. 2000) ......................................................................6, 10

*Zarinebaf v. Champion Petfoods USA Inc.*,
  No. 18 C 6951, 2022 WL 910638 (N.D. Ill. Mar. 29, 2022) ...........................15, 16

*In re Zimmer Nexgen Knee Implant Prod. Liab. Litig.*,
  No. 11 C 5469, 2015 WL 3669933 (N.D. Ill. June 12, 2015) ................................12

## Other Authorities

Fed. R. Evid. 403 .....................................................................................................7

Fed. R. Evid. 702 .....................................................................................................3

Fed. R. Evid. 702(a) .................................................................................................7

## GLOSSARY OF TERMS

| TERM | DESCRIPTION |
|---|---|
| Class, Classes | As defined in the Motion for Class Certification and Reply. Unless otherwise specified, all references to "Classes" or the "Class" refer collectively to the Multi-State Consumer Protection Class and the Illinois Class. |
| Dean Report | Expert Report of Dr. Jeffrey Dean, ECF No. 111-3 (cited as "Dean Report ¶ ___"). |
| Dean Rebuttal Report | Expert Report (Rebuttal) of Dr. Jeffrey Dean, ECF No. 164-1 (cited as "Dean Rebuttal Report ¶ ___"). |
| Defendant | Defendant MAM USA Corporation |
| Dennis Rebuttal Report | Expert Report (Rebuttal) of Dr. J. Michael Dennis, ECF No. 165-2 (cited as "Dennis Rebuttal Report ¶ ___"). |
| Motion or Motion for Class Certification | Plaintiff's Motion for Class Certification, ECF No. 110, and Memorandum of Law in support thereof, ECF No. 111 (cited as "Mot. at ___"). |
| Opposition | Defendant MAM USA Corporation's Memorandum in Opposition to Plaintiff's Motion for Class Certification, ECF No. 138 (cited as "Opp. at ___"). |
| Orthodontic Pacifiers or Class Products or Products | All MAM-branded pacifiers listed in Mot. Ex. 3 (ECF No. 111-1 at 30). |
| Orthodontic Representations | "Orthodontic nipple promotes proper oral development," "orthodontically correct pacifiers" and "orthodontic nipple." |
| Plaintiff | Plaintiff Dominique Freeman |
| Rule | Federal Rule(s) of Civil Procedure. |
| Verlinda Report | Expert Report of Dr. Jeremy Verlinda, ECF No. 111-5 (cited as "Verlinda Report ¶ ___"). |
| Verlinda Rebuttal Report | Expert Report (Rebuttal) of Dr. Jeremy Verlinda, ECF No. 165-3 (cited as "Verlinda Rebuttal Report ¶ ___"). |
| Weiner Declaration | Declaration of Melissa S. Weiner in Support of Plaintiff's Motion for Class Certification, filed concurrently herewith (cited as "Weiner Decl. ¶ ___" or "Weiner Ex. #"). |
| Chase Report | Expert Report of Assistant Professor Isabelle Chase, DDS, FRCD(C), ECF No. 139-12 (cited as "Chase Report ¶ ___"). |
| Chase Dep. | Deposition of Dr. Isabelle Chase, dated August 25, 2023, ECF No. 164-13 (cited as "Chase Dep. Page:Line"). |
| Gal Report | Expert Report of Dr. David Gal, Ph.D., ECF No. 139-32 (cited as "Gal Report ¶ ___"). |
| Gal Dep. | Deposition of Dr. David Gal, Ph.D., dated July 2, 2023, filed concurrently herewith as Ex. 1 to the Weiner Decl. (cited as "Gal Dep. Page:Line"). |

| TERM | DESCRIPTION |
|---|---|
| Defendant's Sur-Reply | Defendant's Sur-Reply Memorandum of Law, ECF No. 186 (cited as Def. Sur-Reply at ___"). |
| Reply | Plaintiff's Reply Memorandum of Law in support of her Motion for Class Certification, ECF No. 163 (cited as "CC Reply at ___"). |

By Order of the Court (ECF No. 155), Plaintiff, individually and on behalf of all others similarly situated, hereby submits this Sur-Reply memorandum in support of her motions to strike/exclude the expert testimony of Defendant's expert, Dr. Gal, in its entirety, and of Assistant Professor Isabelle Chase, DDS, FRCD(C), in part. *See* CC Reply, ECF No. 163.

## I. <u>INTRODUCTION</u>

Plain and simple, Dr. Gal and Professor Chase are not qualified to opine on the issues presented by Defendants in challenging Plaintiff's experts. Because they are unqualified, their opinions will not assist the trier of fact and, therefore, must be stricken under *Daubert* and Federal Rules of Evidence 104, 401, 402, 403, and 702.

## II. <u>PLAINTIFF'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. GAL AND PROFESSOR ISABELLE CHASE</u>

### A. <u>PLAINTIFF'S CHALLENGES TO DR. GAL'S QUALIFICATIONS ARE COMPELLING</u>

Defendant's Sur-Reply is wrought with falsities regarding Plaintiff's position. As discussed in Plaintiff's Reply, Dr. Gal is not qualified to critique Dr. Dennis due to a basic misunderstanding about a widely accepted and highly technical statistical analysis. He also improperly disputes the validity of Dr. Verlinda's market price premium estimate without buttressing his contentions with any sort of scientifically reliable support and certainly without the relevant training or experience. Finally, he mischaracterizes Dr. Dean's expert opinion with irrelevant considerations about how *consumers* understand the challenged representations. Dr. Gal is not qualified to offer any of the opinions he has proffered regarding the work of Plaintiff's experts. This Court should, therefore, exclude his testimony under *Daubert* and Federal Rules of Evidence 104, 401, 402, 403, and 702.

     1.    <u>Dr. Gal is Unqualified to Opine on Dr. Dennis' Conjoint Analysis and Dr. Verlinda's Price Premium Estimates</u>

Defendant's purported "logical" equivalence regarding Dr. Gal's qualifications is disingenuous. First, and foremost, Dr. Gal admitted there is a clear distinction between experts in his field and Dr. Dennis' field, stating, ███████████████████████████████ ███████████████████████████████████████████████████ *See* Gal Dep. 36:11-14. Given that Dr. Gal also admitted that he has never performed a conjoint analysis, a more appropriate analogy for his qualifications would be that of a primary care physician attempting to opine on specialized medical procedures engaged in by a heart surgeon. *Id.* 15:8-9 ███████████ ██████████████████████████████); 22:20-23 ████████████████████████ ███████████████████████████); 26:17-21 ████████ ████████████████████████████████████████).

Despite confirming this inexperience and lack of expertise in the requisite area, Dr. Gal attempts to identify alleged flaws in the analysis of Plaintiff's expert without ever fully substantiating his non-expert assertion. *Id*. 40:16-41:17; 42:8-13 ██████████████████ ████████████████████████████████████████████████████ ███████████████████. Dr. Gal lacks the specialized knowledge and practical experience to offer such conclusory opinions on a survey methodology for which he has no technical or practical experience. His opinions clearly exceed the contours of his qualifications, and Defendant's attempt to recast his qualifications as a broad marketing expert (and hence qualified in conjoint analysis) should be rejected. As discussed herein, Dr. Gal's lack of experience speaks for itself. *See supra*. In fact, a simple comparison of Dr. Gal's and Dr. Dennis' qualifications underscores Dr. Gal's lack of specialized experience in conjoint design and implementation.

(a)      Dr. Dennis' Conjoint Analysis

Interestingly, Defendant fails to adequately respond to Plaintiff's argument regarding Dr. Gal's inability to satisfy the reliability requirement under *Daubert*. The basis for whether expert testimony can be deemed reliable, and one of the core aspects of the *Daubert* opinion, is "an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588 (1993). Dr. Gal simply does not have any reliable knowledge or practical experience on the subject of conjoint surveys to "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. This explains why his non-expert opinion is filled with generalized conclusions, dismissive biases, and preconceptions about the overall utility of conjoint surveys. *See U.S. v. Chang*, 207 F.3d 1169, 1172 (9th Cir. 2000); *see also* Gal Dep. 35:19-36:5; 85:19-22 ███████ ████████████████████████████████████████████████████████████████████ ████████████████████████████ ).

When considering Dr. Dennis' expert analysis, it is not the Court's function to connect the dots for Dr. Gal or Defendant. Dr. Gal's *general* opinion is based on self-serving citations that cannot be considered soundly reasoned or relevant to the *specific* conjoint analysis put forth by Plaintiff's highly qualified expert. Defendant goes to great lengths to attempt to rehabilitate Dr. Gal's self-serving reliance on his own peer-reviewed article. *See* Gal Dep. 86:16-19 (████████ ████████████████████████████████████████████████████████████████████ ██████████████████ ). However, the fact that Dr. Gal's publication predates this litigation is of little consequence. It is not the timing of the publication, but his reliance on his own publication that renders Dr. Gal's opinions unreliable in this matter. He merely relies on his own general opinions regarding conjoint analysis while completely disregarding the fact that the very client, who hired him, utilizes conjoint analysis in a manner he rejects. *Id.* 87:21-23 (████████████████████

████████████████████████████████████████████████████████████). Furthermore, Dr. Gal's general opinion has been overwhelmingly rejected by courts across the nation. And his failure to consider Defendant's own use of conjoint analysis further discredits his self-serving opinions.

Moreover, Dr. Gal's opinion regarding conjoint analysis is considered an outlier in the scientific research community. In fact, his lack of citations was the driving force behind him being passed over for tenure at Northwestern University. *Id.* 18:9-23 (████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████) *see also Id.* 19:5-12 (████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████). Even today, Dr. Gal's publications lack any sort of traction among scholars in the scientific community. A prime example of this is Dr. Gal's 2020 publication, *Predicting consumers' choices in the age of internet, AI, an almost perfect tracking: Some things change, the key challenges do not*, which has been cited a meager *six* times, according to the Society for Consumer Psychology.[1] Defendant attempts to circumvent this glaring issue by creating the appearance that Dr. Gal has been published subsequently on the topic of conjoint analysis on Westlaw. First, this article has never been cited by any court. It, rather, is another self-serving attempt at publication and merely regurgitates the same general biases from the 2020 publication, this time in the third person.

Additionally, Dr. Gal's 2020 publication suffers from bias. Dr. Derek D. Rucker, who was one of the editors of the journal at the time of Dr. Gal's publication, is also a co-author with Dr.

---

[1] *See generally* https://myscp.onlinelibrary.wiley.com/doi/abs/10.1002/arcp.1068.

Gal on multiple non-related pieces.[2] Typically, scholarly journals employ strict criteria for review, which lasts a period of several months before acceptance is granted. Remarkably, Dr. Gal's 2020 publication underwent review for only two days before acceptance was granted by the journal. *See* n.1 above. This abnormal timeline and the bias questions raised by the relationship with the editor are additional considerations undermining Dr. Gal's reliance on his own self-serving publication.

Defendant attempts to glorify Dr. Gal's "unique" experience, which is different from that of Dr. Dennis. This argument is a red herring because the issue is not that Dr. Gal and Dr. Dennis have *different* experience, but that Dr. Gal completely lacks any of the necessary experience in reviewing, designing, implementing, and, thus, critiquing conjoint analysis. Defendant conveniently ignores multiple cases that demonstrate the overwhelming acceptance of conjoint analysis as inputs for a market simulation in a consumer class action.

Curiously, Defendant discusses the *Chang* decision and erroneously contends that Dr. Gal has the requisite qualifications to opine on Dr. Dennis' conjoint analysis. In reality, Dr. Gal is just as unqualified as the expert in *Chang*, who similarly had no practical experience in the specific field. Any comparison between Dr. Dennis' expert credentials in conjoint analysis and Dr. Gal's general marketing background is fatally flawed. The *Chang* decision does not support the argument Defendant is attempting to make because Dr. Gal has no experience in the review, design, or implementation of conjoint analysis. Indeed, the *Chang* decision accomplishes the opposite and supports Plaintiff's assertion that Dr. Gal is unqualified. *Chang*, 207 F.3d at 1172 (affirming exclusion of expert who, while experienced in international finance, had no experience in identifying the counterfeit foreign securities at issue); *see also Thomas J. Kline, Inc. v. Lorillard,*

---

[2] *See, e.g.*, https://psycnet.apa.org/record/2020-55301-001; https://myscp.onlinelibrary.wiley.com/doi/abs/10.1002/jcpy.1044; https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3049660; and https://journals.sagepub.com/doi/abs/10.1177/0956797610385953.

*Inc.*, 878 F.2d 791, 800 (4th Cir. 1989); *Virginia Vermiculite Ltd. v. W.R. Grace & Co.-Conn.*, 98 F. Supp. 729 (W.D. Va. 2000).

Despite Defendant's effort to generalize Dr. Gal's experience in "survey methods, consumer psychology, consumer decision making, and marketing," *see* Sur-Reply at 27, to cover up his complete lack of experience in conjoint design and analysis, it simply cannot manufacture experience that Dr. Gal does not possess. Defendant's tireless effort to compare the differing credentials of the parties' experts is a side show to the only matter at hand: whether Dr. Gal is qualified to criticize Plaintiff's expert reports. As such, his opinions are outside the purview of his expertise and should be disregarded by the Court.

(b)     Dr. Verlinda's Price Premium Estimates

Defendant cannot suggest with a straight face that Dr. Gal has any relevant experience to criticize Dr. Verlinda's opinions. Dr. Gal's opinions regarding Dr. Verlinda's price premium estimates lack any "scientific" basis, which is required in order for opinions to be relied upon by the Court (or presented to a jury). *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2022 WL 1720468, at *7 (N.D. Ill. May 27, 2022) (citing *Smith v. Ford Motor Co*., 215 F.3d 718, 719 (7th Cir. 2000), and *Daubert*, 509 U.S. 579). Under *Daubert*, for an expert opinion to be admissible, the expert must apply a scientifically reliable methodology. *Smith*, 215 F.3d at 718.

Defendant attempts to sidestep this issue by suggesting Dr. Gal's criticisms of Dr. Verlinda are predicated on his discussion regarding Dr. Dennis' conjoint analysis. Notwithstanding his lack of expertise in both areas, Dr. Gal—with no economic or marketplace simulation experience— boldly concludes that ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████ *See* Gal Report ¶¶ 31-32. Tellingly, he again never offers to support these claims with any form of work, independent research, or reliable scientific methodology. *See* Gal Dep. 109:19-

25 ██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Instead of offering credible, scientific work that contradicts the inputs derived from Dr. Dennis' conjoint analysis, Dr. Gal simply rejects Dr. Verlinda's price premium estimates with inconsequential attacks about his experience (for which he has no experience to comment).

    2.  Defendant's Use of the Conjoint Survey Methodology for Price Premium Purposes is Ironic

  In her Reply, Plaintiff highlighted the inconsistency between Dr. Gal's contention that conjoint analysis has "████████████ *see* Gal Report at 14, and the reliance by Defendant on conjoint survey results in pricing and positioning pacifier products. Dr. Gal's refusal to acknowledge <u>this</u> company's use of conjoint analysis as evidence of its validity and his lack of effort to speak to anyone at Defendant to better understand its belief as to the utility of conjoint analysis and the use of its results in the real world, significantly undermines his credibility. *See, e.g.*, Gal Dep. 53:16-54:2; 64:24-65:6; 77:4-81:15.

    3.  Defendant's Criticisms of Dr. Dean Are Irrelevant

  Any opinion from Dr. Gal regarding Dr. Dean's opinion on *consumer* understanding serves no purpose other than to confuse the trier of fact and, thus, cannot be relied upon. Fed. R. Evid. 702(a). Moreover, its probative value is substantially outweighed by the danger of confusion of the issues and misleading the jury. Fed. R. Evid. 403; *Daubert*, 509 U.S. at 595. Defendant strangely insists on mischaracterizing the purpose of Dr. Dean's opinion, even though Dr. Gal himself acknowledged that Dr. Dean never purported to opine, in any respect, on *consumer* understanding of the challenged representations. *See* Gal Dep. 105:24-106:3; 106:15-19.

As previously discussed in Plaintiff's Reply, Dr. Dean explicitly explained, "The use of the term 'orthodontic' is commonly understood **in the dental, orthodontic, and medical community** as a method or device to prevent or treat malocclusion." Dean Report ¶ 34 (emphasis added). He further concluded, "Pacifiers cannot be 'orthodontic' as they are not medical devices and they do not prevent or treat malocclusions or promote oral development." *Id*. ¶ 35. Clearly, Dr. Dean made no attempt to assess *consumer* perception of the challenged representations, and his expert opinion is supported by extensive experience and comprehensive review of literature in the dental, orthodontic, and medical community. *Id*. ¶ 36.

**B.** **THE PARAGRAPHS IN THE CHASE REPORT PERTAINING TO FEA MUST BE STRICKEN DUE TO DR. CHASE'S LACK OF EXPERTISE AND EXPERIENCE IN THE RELEVANT FIELD AND HER FAILURE TO EXAMINE OR VERIFY THE UNDERLYING MODELS**

Under Rule 703, courts must examine the underlying basis and sources used by the expert for reliability prior to admitting the expert. *See In re NorthShore Univ. HealthSystem Antitrust Litig.*, No. 07 CV 04446, 2023 WL 2138971, at *13 (N.D. Ill. Feb. 20, 2023).

> Rule 703 does not govern the information that experts can have; it governs the information on which they can base their opinions. It allows experts to rely on inadmissible facts or data in forming an opinion so long as "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject."

*Sansone v. Brennan*, 917 F.3d 975, 982 (7th Cir. 2019) (quoting Fed. R. Evid. 703). Applying these rules combined with Dr. Chase's admissions indisputably shows that the FEA portions (¶¶ 45-47) of the Chase Report must be excluded.

1. Defendant Vastly Overstates The Degree Of Support Regarding FEA Expressed By the AAPD And Understates The Chase Report's Use Of Those Sources

Defendant attempts to downplay the importance of the FEA portions of the Chase Report by misrepresenting the degree of support for FEA expressed by the AAPD. Further, Defendant

attempts to minimize the degree of use of FEA in the Chase Report. These misleading representations do not justify Dr. Chase's error in opining on and using a scientific method that she is not qualified to use or interpret.

        (a)    Defendant overstates the degree of support for FEA expressed by the AAPD

Defendant attempts to justify the Chase Report's foray into FEA by exaggerating the AAPD's comments on its usefulness. *See* Def. Sur-Reply at 35, 37, 38. Defendant's extensive reliance on the AAPD's statements regarding FEA in the *Policy on Pacifiers* implies lengthy discussion thereof in the document. In truth, the *Policy on Pacifiers* contains two, non-noteworthy sentences regarding FEA—"The use of biometrics to aid pacifier selection has shown promise," and, "The AAPD encourages additional research regarding the biometrics for pacifier selection to minimize disturbances of the developing orofacial complex." ECF 164-14, American Academy of Pediatric Dentistry (2022) *Policy on Pacifiers* 86, 87 ("*Policy on Pacifiers*").

Defendant takes these two nondescript sentences and attempts to justify a whole section of the Chase Report. At no point did the *Policy on Pacifiers* express support (1) for the FEA papers' (and, thus, their underlying models) accuracy, (2) the use of FEA in making dental decisions, or (3) push for industry or scientific acceptance of the use of FEA models. *See generally Policy on Pacifiers*. Instead, the *Policy on Pacifiers* merely expressed support for continued research that *may* enable FEA to provide insight regarding any of these points in the future. Perhaps most tellingly, the concluding "Policy statement" does not incorporate any of the findings of the FEA papers cited in the *Policy on Pacifiers*. *See id*. at 87.

It is clear that Defendant overstates AAPD's use of the technique to justify Dr. Chase's ill-advised, and unsupported, use of FEA in the Chase Report.

(b)     The Chase Report Uses FEA More Than Defendant Represents

Perhaps implicitly acknowledging the lack of support for FEA in the *Policy on Pacifiers*, as well as Dr. Chase's dearth of knowledge and experience in the field, Defendant attempts to portray the FEA portions of the Chase Report as merely pointing out that the Dean Report did not address FEA. Def.'s Sur-Reply at 35, 36-37. However, the Chase Report exceeds this representation. *See* Chase Report ¶¶ 45-47. The subject paragraphs quote from and discuss the findings of the FEA papers.[3] *See id.* This is far beyond simply pointing out a lack of consideration in the Dean Report.

2.     Dr. Chase Lacks The Requisite Knowledge And Skill To Review, Apply, or Opine on FEA Analysis

"To qualify as an expert, a witness must have 'knowledge, skill, experience, training, or education' relevant to such evidence or fact in issue." *Chang*, 207 F.3d at 1172. **An expert qualified in one field is not allowed to offer opinions outside his or her area of expertise**. *Chang*, 207 F.3d at 1172 (affirming exclusion of expert who, while experienced in international finance, had no experience in identifying the counterfeit foreign securities at issue) (emphasis added); *see also Thomas J. Kline, Inc.*, 878 F.2d at 800; *Virginia Vermiculite Ltd.*, 98 F. Supp. 2d 729.

"Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, or education with the subject matter of the witness's testimony." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) (citing *Carroll v. Otis*

---

[3] There are obvious deficiencies in these FEA papers as described in Plainitff's Omnibus Brief (ECF No. 165) on pages 59-60 and in the rebuttal report of Dr. Sean S. Kohles (ECF No. 164-15). These deficiencies have been thoroughly presented in the Omnibus Brief and will not be reiterated here. Notably, Defendant's Sur-Reply rehashes many issues from their attempt to Strike the Kohles Rebuttal Report (ECF Nos. 166, 172, 177) which are improper in considering the subject matter presently before the Court. *See* Def. Sur-Reply at 35-36, 37.

*Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990)). "In a case where one expert's opinion relies on the work of an undisclosed expert, the admissibility of the opinion turns 'on the counters of Fed. R. 703' . . . ." *Noffsinger v. Valspar Corp.*, No. 09 C 916, 2013 WL 12340339, *2 (N.D. Ill. Jan. 4, 2013) (quoting *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 646, 653 (N.D. Ill. 2006)).

Defendant claims that Plaintiff's argument that the FEA portions of the Chase Report need to be stricken is riddled with "analytical leap[s]." Def. Sur-Reply at 35-36. However, the simple truth, regardless of how Defendant attempts to present it, is that Dr. Chase does not have the necessary background or experience to be an FEA expert or to even review FEA papers. Dr. Chase admitted as much in her deposition.

> Q: Have you ever published a paper or done any research involving Finite Element Analysis?
> A: No.
> Q: Would consider yourself an expert in Finite Element Analysis?
> A: No.
> Q: Have you ever peer reviewed a paper dealing with Finite Element Analysis?
> A: No.
> Q: Would you consider yourself able to peer review a paper dealing with Finite Element Analysis?
> ***
> A: I don't know that I've ever been or would be asked to do such a thing.
> Q: Do you have the background sufficient to determine the quality of the engineering input in a Finite Element Analysis Study?
> A: No.

Chase Dep. 23:13-24:7 (omitting an objection); *see also id*. at 89:3-91:4 (noting Dr. Chase cannot analyze (1) the underlying CAD models from the FEA papers; (2) the accuracy and quality of the underlying FEA models used; nor (3) the materials models used).

Since Dr. Chase could not (and did not) verify the underlying assumptions and modeling in the FEA studies she cited, her reliance on them in the Chase Report is improper. The Seventh Circuit addressed a similar Rule 703 issue in which an expert attempted to utilize the output from a third party's mathematical modeling as a basis for his "expert" conclusions. *Dura Auto. Sys. of*

*Indiana, Inc. v. CTS Corp.*, 285 F.3d 609 (7th Cir. 2002). Like here, the expert stated "he was not an expert" in the model relied upon and that it had been developed by others. *Id*. at 611-12. The Seventh Circuit affirmed the trial court's disqualification of the expert because the modeling experts "exercise[d] professional judgment that is beyond the [admitted] expert's ken." *Id*. at 612-13. In affirming, the Seventh Circuit explained "[a] scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty." *Id*. at 614.

Defendant attempts to analogize Dr. Chase's use of FEA to the expert in *In re Zimmer Nexgen Knee Implant Products Liability Litigation*, No. 11 C 5469, 2015 WL 3669933 (N.D. Ill. June 12, 2015) ("*Nexgen*"). However, the *Nextgen* facts further underscore why Dr. Chase's opinions should be excluded. *Id*. at *2. The expert in *Nexgen* completed both undergraduate and graduate work in engineering, particularly in mechanical and biomechanical engineering. *Id*. at *19. Further, the *Nexgen* expert had written or co-authored numerous papers on biomechanics and regularly consulted with biomechanical engineers. *Id*. In addition to the vast educational and experiential differences between the two experts, the scope of their work also differs. In *Nexgen*, the expert's work focused on the "boundary conditions and assumptions" in the FEA model at issue—all considerations Dr. Chase admitted she was not qualified to review.

A more adept analogy is *Bozick v. Conagra Foods, Inc.*, No. 19-cv-4045 (LJL), 2022 WL 4561779 (S.D.N.Y. Sept. 28, 2022). In *Bozick*, the expert's underlying FEA model was challenged because he did "not demonstrate that the 'Computer Aided Analysis' that he relie[d] upon ha[d] been properly verified and/or validated such that it can be used with reasonable certainty in a capacity predictive of true buckling pressures." 2022 WL 4561779, at *16. Since the underlying research was not scientifically reliable, the court excluded the expert in question. *Id*. at *28. Other courts across the country have excluded experts who use FEA models that were similarly flawed.

*See Coffey v. Dowley Mfg. Inc.*, 187 F. Supp. 2d 958, 974-79 (M.D. Tenn. 2002) *aff'd* 89 Fed.App'x. 927 (6th Cir. 2003) (excluding an expert who used an FEA model where the expert "assumed certain parameters" and used "guesstimations" for some variables); *Medtronic, Inc. v. Boston Sci. Corp.*, No. 99-1035 (RHK/FLN), 2002 WL 34447587. *18-21 (D. Minn. Aug. 8, 2002) (excluding expert's use of FEA due to "assumptions he made to establish his model").

This Court should ignore Defendant's convoluted and desperate attempts to save the FEA portions of the Chase Report and apply the sound reasoning in *Bozick*, and other cases like it, where an expert is not permitted to opine regarding models they do not understand and did not verify.

### III.     PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

As fully set forth in her Motion for Class Certification and her Reply in support thereof, Plaintiff has met her burden at the class certification stage: common evidence supports Plaintiff's claims that reasonable consumers were misled by Defendant's uniform deception on the labels of its Orthodontic Pacifiers and, therefore, class treatment is proper.

In support of her Motion for Class Certification, Plaintiff presents the expert opinions of three highly qualified experts to assist the trier of fact. Defendant's challenges of each of them fall short and should be summarily denied.

#### A.     Dr. Dean is Qualified, and His Methodology is Scientifically Reliable and Will Assist the Trier of Fact

Dr. Dean's task was to provide an expert opinion "as to the use of 'orthodontic' pacifiers, and specifically, whether 'orthodontic' pacifiers are known to provide therapeutic or preventative dental bite (occlusal) benefit." Dean Report ¶ 2. Dr. Dean opines on pediatric dentistry, pacifiers, and how all pacifiers, regardless of how manufacturers choose to label them, detrimentally affect oral health. Dr. Dean clearly offers opinions regarding the fact that no pacifier can be "orthodontic"

and that the weight of the scientific literature that examined the subject has concluded that so-called "orthodontic" pacifiers offer zero benefits as compared to traditional pacifiers or other pacifiers not advertised as "orthodontic." Dean Rebuttal Report ¶¶ 3, 25.

Defendant asserts that Dr. Dean's opinions should be excluded because his conclusions "regarding the meaning of the word 'orthodontic' and whether its use by MAM could be deceptive to a reasonable consumer . . . is irrelevant and has no scientific basis." Opp. at 26. Despite Defendant's distortion, Dr. Dean does not offer any opinion as to the reasonable consumer's understanding of "orthodontic," but, rather, his opinions go to whether any pacifier (and specifically the Orthodontic Pacifiers) is capable of promoting oral development. And Dr. Dean offers no opinions regarding how consumers interpret the Orthodontic Representations, making Defendant's argument entirely inapplicable.

Dr. Dean's expertise, methodology, and the connection between the two demonstrates that Dr. Dean is qualified, and his opinions are well supported by a sound methodology as well as impeccable credentials and expertise, as required by *Daubert* and Rule 702. Dr. Dean's opinions are reliable and will assist the trier of fact as to a common issue in this case: "the effects of pacifiers on oral development." *See Benson v. Newell Brands, Inc*., No. 19 C 6836, 2021 WL 5321510, at *2 (N.D. Ill. Nov. 16, 2021).

### B.    Dr. Dennis is Qualified, His Methodology is Scientifically Reliable, and Will Assist the Trier of Fact

Dr. Dennis has submitted the design for a choice-based conjoint survey, which "is typical of, and generally accepted by, experts in the field of consumer market research" for determining the values consumers place on various product attributes. Dennis Rebuttal Report ¶ 2. Dr. Dennis has designed and will conduct the survey using sound research practices and industry standards.

14

*Id.* ¶ 11. As courts nationwide regularly conclude, a conjoint survey can be used in conjunction with an economic analysis to determine class-wide damages.

None of Defendant's wide-ranging criticisms of Dr. Dennis require his exclusion in this case. Indeed, technical and variable criticisms are issues for a jury to consider because they go the weight and not admissibility. *See, e.g.*, *Zarinebaf v. Champion Petfoods USA Inc.*, No. 18 C 6951, 2022 WL 910638, at *4 (N.D. Ill. Mar. 29, 2022). However, even if the Court evaluates the survey design at this stage, Dr. Dennis has proposed a reliable methodology that has been accepted by courts nationwide. Dr. Dennis responds to each and every criticism in his Reply Declaration and explains why conjoint—a tool utilized repeatedly by Defendant for pricing and positioning of the very products at issue in this case—is appropriate here. *See generally* Dennis Rebuttal Report.

Dr. Dennis is qualified, and his methodology is scientifically reliable. Dr. Dennis' survey will provide a sound basis for Dr. Verlinda to calculate the price premium associated with the Orthodontic Representations and, therefore, Class damages, which will be essential for the jury.

### C. Dr. Verlinda is Qualified, His Methodology is Scientifically Reliable, and Will Assist the Trier of Fact

Following the successful implementation of the survey by Dr. Dennis, Dr. Verlinda will begin the economic aspect of the analysis, measuring the price premium alleged by Plaintiff and calculating class-wide damages.[4] As proposed, Dr. Verlinda will use a well-established methodology to calculate the price premium in this case. Dr. Verlinda, an indisputably qualified expert in economics, will offer scientifically reliable opinions that match Plaintiff's theory of liability and will assist the trier of fact. Dr. Verlinda's methodology is "based on standard

---

[4] In addition to the above damage calculations for the Class, Dr. Verlinda is able to calculate statutory damages for New York consumers pursuant to New York GBL § 349(h). *See* Verlinda Report ¶ 48.

econometric analysis based on common and non-controversial assumptions about consumer demand, firm behavior, and market clearing mechanisms." Verlinda Rebuttal Report ¶ 5.

Defendant argues that Dr. Verlinda's methodology is not grounded in science and is therefore unreliable. Mot. at 44. However, this could not be farther from the truth, nor does it warrant exclusion. Indeed, Dr. Verlinda is a highly qualified academic (*see* Verlinda Report ¶¶ 1-7) and has supported his proposed methodology with detailed reports and specific references to the industry-standard materials on which he relied (*see* Verlinda Report Appendix C (Materials Relied Upon); Verlinda Rebuttal Report Appendix A (same)). Defendant's challenges are based on a difference in opinion between Dr. Verlinda and Dr. Aron and, therefore, are insufficient to disqualify Dr. Verlinda and at best create a "battle of the experts" for a jury to consider and weigh. *See Cardenas v. Toyota Motor Corp.*, No. 18-22798-CIV, 2021 WL 5811741, at *5 (S.D. Fla. Dec. 6, 2021) ("A difference in opinion is not a basis for exclusion of an expert opinion under Daubert standards."); *see also Zarinebaf*, 2022 WL 910638, at *4.

At its core, this case is about whether a reasonable consumer would be misled by Defendant's "orthodontic" representation, and the ***value that it carries***. Dr. Verlinda's analyses are helpful because he will calculate the basic measure of damages—the difference in value between what Plaintiff and the proposed Class were promised by Defendant and what they received from Defendant. But whether Dr. Verlinda's or Defendant's Experts are correct is a common issue that can be answered by a trier of fact for the proposed Class as a whole and is a matter outside of Dr. Verlinda's purview as an expert witness. "The Rules of Evidence embody a strong and undeniable preference for admitting any evidence which has the potential for assisting the trier of fact." *Takeda Pharms. USA, Inc. v. Spireas*, No. CV 17-0452, 2019 WL 9596536, at *1 (E.D. Pa. Sept. 4, 2019) (citing *Kannankeril v. Terminix Int'l, Inc*., 128 F.3d 802, 806 (3d Cir.

1997) (citations omitted)). "As the Supreme Court in *Daubert* stated: 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (citing *Daubert*, 509 U.S. at 595). Dr. Verlinda is qualified and has presented a scientifically reliable methodology—it is now up to a jury to weigh the evidence and expert opinions and determine the outcome of this litigation.

## IV.   **CONCLUSION**

For the reasons set forth herein, as well as Plaintiff's Motion for Class Certification and her Reply in support thereof, Plaintiff respectfully requests that the Court:

1.      Grant Plaintiff's Motion for Class Certification and (1) certify the Multi-State Class; (2) appoint Plaintiff Dominique Freeman as Class Representative; and (3) appoint Pearson Warshaw, LLP and Lynch Carpenter, LLP as Co-Lead Class Counsel.

2.      Deny Defendant's motions to exclude (1) Dr. J. Michael Dennis; (2) Dr. Jeremy Verlinda; and (3) Dr. Jeffrey A. Dean.

3.      Grant Plaintiff's motion to strike the improper physical evidence submitted to the Court.

4.      Grant Plaintiff's motions to exclude (1) Dr. David Gal, Ph.D. (entirely); and (2) Assistant Professor Isabelle Chase, DDS, FRCD(C) (in part).

Respectfully submitted,

Dated: November 14, 2023      By:  */s/ Melissa S. Weiner*
                       MELISSA S. WEINER
                       mweiner@pwfirm.com
                       **PEARSON WARSHAW, LLP**
                       328 Barry Avenue S., Suite 200
                       Wayzata, MN 55391
                       Telephone: (612) 389-0600
                       Facsimile: (612) 389-0610

                       EDWIN J. KILPELA
                       ekilpela@lcllp.com
                       JAMES M. LAMARCA
                       james@lcllp.com
                       **LYNCH CARPENTER, LLP**
                       1133 Penn Avenue, 5th Floor
                       Pittsburgh, Pennsylvania 15222
                       Telephone: (412) 253-4996
                       Facsimile: (412) 231-0346

                       KATRINA CARROLL
                       kcarroll@lcllp.com
                       **LYNCH CARPENTER, LLP**
                       111 W. Washington Street, Suite 1240
                       Chicago, Illinois 60602
                       Telephone: (312) 750-1265
                       Facsimile: (312) 750-1591

                       DANIEL L. WARSHAW
                       dwarshaw@pwfirm.com
                       MICHAEL H. PEARSON
                       mpearson@pwfirm.com
                       **PEARSON WARSHAW, LLP**
                       15165 Ventura Blvd., Suite 400
                       Sherman Oaks, CA 91403
                       Telephone: (818) 788-8300
                       Facsimile: (818) 788-8104

                       *Attorneys for Plaintiff*